**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER HAIRE,** | ) | **CASE NO.  1:15 CV 1308** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **CUYAHOGA COUNTY CLERK** | ) | |
| **OF COURTS, et al.,** | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Court on the following, fully briefed motions:

• Cuyahoga County Defendants' Motion to Dismiss Plaintiff's Complaint with Prejudice (**Doc #: 30**);

• Defendant Official Payments Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(6) (**Doc #: 19**); and

• Defendant Point and Pay, LLC's Motion to Dismiss (**Doc #: 25**).

Plaintiff Christopher Haire contends, among other things, that the charging of a $6.95 convenience fee to plaintiffs who filed civil lawsuits online in the Cuyahoga County Court of Common Pleas from January 1, 2011 to September 9, 2014, absent authorization under Ohio Revised Code 301.28, constituted a violation of their substantive due process rights under the United States Constitution.

Because the Court finds no constitutional violation, the Court **dismisses with prejudice** the federal claim asserted in Count IV of the Complaint.  Because the Court dismisses the federal claim, the Court will exercise its discretion to dismiss without prejudice the state-law claims asserted in Counts I-III.

## I. Procedural Facts

On June 13, 2014, Plaintiff Christopher Haire filed a putative class action on behalf of all litigants filing civil cases in the Cuyahoga County Court of Common Pleas (the "County Court"), between January 1, 2011 through September 9, 2014, via the court's electronic filing system. He brought the case against Andrea Rocco in her official capacity as Clerk of Courts, and the case was assigned No. CV-14-828279. The state court complaint sought a declaration, under Ohio Revised Code Chapter 2721, that the Clerk unlawfully assessed and collected a convenience fee from civil litigants who filed their lawsuits via the court's electronic filing system. Plaintiff claimed that the convenience fee was unlawful because it was not authorized pursuant to O.R.C. 301.28. Specifically, Plaintiff asserted that when filing his complaint electronically, the payment screen of the e-filing system showed, prior to confirmation, that he would be charged a convenience fee of $6.95 in addition to the $250 filing fee. He accepted the convenience fee that he now asserts is illegal.

On September 22, 2015, Plaintiff filed a motion for leave to file a first amended complaint for the purpose of adding additional Cuyahoga County defendants along with the vendors whose financial transaction devices were used to accept the filing fees. He also sought to bring two state-law declaratory judgment claims and a state-law claim for conversion. After extensive discovery including the deposition of Ms. Rocco, and before a ruling on his motion for leave, Plaintiff voluntarily dismissed the state case on September 15, 2015.

That same day, Plaintiff filed the instant complaint in federal court, bringing a putative class action "on behalf of all customers and users of Cuyahoga County services who [were] charged a 'convenience fee' for using a financial transaction device from January 1, 2011

through September 9, 2015, while paying for county services." (Doc #: 1 ¶ 56.) He brought this case against the Cuyahoga County Clerk of Court, the County's Treasurer and Fiscal Officer, vendors Point and Pay, LLC and Official Payments Corporation,[1] and John Doe county and vendor defendants. The instant complaint brings two state-law declaratory judgment claims, a state-law conversion claim, and a federal constitutional claim under 42 U.S.C. § 1983 for the violation of his substantive due process rights.

The Cuyahoga County Defendants, Official Payments, and Point and Pay have moved to dismiss the claims under Fed. R. Civ. Pro. 12(b)(6). The Cuyahoga County Defendants ask the Court to dismiss the sole federal claim because (1) Plaintiff fails to assert a constitutional violation,
(2) the collection of a small administrative fee for filing complaints using the Court's electronic filing system is rationally related to a legitimate governmental interest, and (3) passing along the $6.95 convenience fees to e-filing users does not shock the conscience. The County Defendants also assert that Plaintiff lacks standing to sue the Fiscal Officer and Treasurer because he has suffered no injury at their hands; and he is without standing to assert the state-law claims because the challenged provision of the Ohio Revised Code does not create a private right of action.

Official Payments seeks dismissal of the federal claim against it because Plaintiff has failed to assert a constitutional violation and Official Payments is not a state actor for purposes of § 1983 claims. Official Payments also contends that Plaintiff lacks standing to sue it.

---

[1] Plaintiff also sued Banc of America Merchant Services, LLC, but dismissed that party on September 17, 2015.

Point and Pay asks the Court to dismiss the federal claim because Plaintiff has failed to state a constitutional violation and Point and Pay is not a state actor. Point and Pay also asks the Court to dismiss the conversion claim because the improper charge of convenience fees does not amount to conversion, as a matter of law and, in any event, the conversion claims relating to January 1, 2011, through July 1, 2011, are time barred.

## II. Substantive Facts

Under O.R.C. 301.28, a county may authorize its departments to accept payments via financial transaction devices after January 1, 1999, only upon passing a resolution authorizing such payments. (Compl. ¶ 12.) The resolution authorizing acceptance of payments via financial transaction devices may also pass on the surcharges from the provider onto the payee as a "convenience fee." (Id. ¶ 13.)

On November 3, 2009, county voters approved the adoption of a county charter form of government to replace the statutory form of government governed by three county commissioners.

On January 1, 2011, the County became fully operational under the charter adopted by the voters in November 2009. (Compl. ¶ 14.) Article 13.06 of the Charter addressed how laws in force at the time of transition to a charter government would be treated. Specifically, Article 13.06 provides that all resolutions from the prior commissioner form of county government were repealed or superseded to the extent they were inconsistent or interfered with the effective operation of the Charter or of ordinances or resolutions enacted pursuant to the Charter. (Id. ¶ 22.)

//

On April 12, 2011, the County entered into an agreement with Point and Pay, LLC for the purpose of accepting payment via financial transaction devices. (Compl. ¶ 31.) On October 14, 2011, the County entered into an agreement with Official Payments Corp. for the same purpose. (Id. ¶ 36.)

In May of 2013, the County Court began phasing in electronic filing of designated civil cases in an effort to modernize and streamline the litigation process and make case management more efficient. (See generally In Re: Electronic Filing of Court Documents, Temporary Admin. Order, Doc #: 30, Ex. R.) The Court directed the Clerk to "establish a means to accept payment of deposits and fees electronically, including the process for filing an affidavit of indigency." (Id., Sec. XIV(B).) The Clerk thereafter offered litigants the ability to pay filing fees and costs online using credit or debit cards via its agreements with Point and Pay and Official Payments, passing the vendor's cost of processing online payments of fees and costs to the persons litigating cases in that Court. However, the Court directed the Clerk to "continue to accept for filing any document in paper form in all cases until further order of the Court." (Id., Sec. III.)

On June 1, 2014, electronic filing of court documents in all civil cases became mandatory. (Compl. ¶ 25.) It is undisputed that, to this day, the Clerk of Courts does not turn away civil litigants who wish to file their actions in person and pay the filing fees via check, money order, or cash without incurring a convenience fee. However, the only way to pay filing fees when filing a civil suit online is via credit card, debit card or electronic check and payment of a $6.95 fee for the convenience of doing so. (Id. ¶ 26.)

On June 12, 2014, eleven days after electronic filing of civil cases became mandatory, Plaintiff filed a civil suit in the County Court via the Court's electronic filing system. (Compl.

-5-

¶¶ 27-28.) In addition to the $250 filing fee, he was forced to pay a convenience fee of $6.95. (Id. 29-30.) Plaintiff maintains that, because the County had failed to pass a resolution authorizing such payments following the change of government from home rule to a charter government, the assessment of a convenience fee was unauthorized. Because the convenience fee was unauthorized by County resolution, it automatically constituted a substantive due process violation.

On August 12, 2014, the County Executive introduced proposed ordinance number O2014-0025, which would allow the County to accept payments via financial transaction devices. (Compl. ¶¶ 40-41.) Plaintiff asserts that the ordinance was prompted, at least in part, in response to his filing of the state court case two months earlier. (Id. ¶ 39.) On September 9, 2014, the ordinance was passed under Chapter 718 of the Cuyahoga County Code, and was to be applied retroactively. (Id. ¶¶ 40, 43, 53-54.)

### IV.  Standard of Review

When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the Plaintiff, accepting all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*. The Court is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 566). Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Importantly, while courts must construe *pro se* complaints liberally in favor of the plaintiff, they too must satisfy the "facial plausibility" standard articulated in *Twombly*.

## V. Law and Analysis

Because the federal claim is the one claim that confers original subject matter jurisdiction on this Court, and because all parties challenge that claim for the same reasons, the Court will address that claim first. To state a § 1983 claim, the plaintiff must sufficiently allege that (1) the conduct complained of was "committed by a person acting under color of state law;" and (2) "the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Graham v. NCAA*, 804 F.2d 953, 957 (6th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). There is no dispute that the Cuyahoga County Defendants are persons acting under color of state law. Thus, the only question is whether their conduct deprived Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

-7-

"Substantive due process 'protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action.'" *MSI Regency Ltd. v. Jackson*, 433 Fed. App'x 420, 429 (6th Cir. 2011) (quoting *Sutton v. Cleveland Bd. Of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992). To establish a substantive due process claim, the plaintiff must sufficiently allege a constitutionally protected interest that was deprived by arbitrary and capricious state action. *Id.* at 429 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "The government action must be such that it "shocks the conscience." *Id.* "Mere negligence is definitely not enough." *Id.* (quoting *Hunt v. Sycamore Comm. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008)). The plaintiff must allege conduct intended to injure it in some way unjustifiable by any government interest. *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007). Even if the defendant's action can be viewed as conscience-shocking, substantive due process requires only that the defendant show its decision was rationally related to a legitimate government interest. *MSI Regency*, 433 Fed.App'x at 429 (citing *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 769 (6th Cir. 2005), in turn citing *Mansfield Apt. Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1477 (6th Cir. 1993)).

The essence of Plaintiff's substantive due process claim is that, between January 1, 2011 (when the County became a charter government and passed Article 13.06) and September 9, 2014 (when the County passed an ordinance authorizing the County Court to accept payments via financial transaction devices), the County's assessment of a convenience fee for filing a

//

//

//

lawsuit online absent authorization under O.R.C. 301.28 was illegal; hence, it automatically violated Plaintiff's substantive due process rights.[2]

Although neither party makes this argument, the Court is not quite as certain as Plaintiff that Article 13.06 of the County Charter even applies to this case. Article 13.06 provides that all resolutions from the prior commissioner form of county government were repealed or superseded to the extent they were inconsistent or interfered with the effective operation of the Charter or of ordinances or resolutions enacted pursuant to the Charter. Plaintiff has not identified an ordinance or resolution from the previous government that Article 13.06 repealed and to what extent it was inconsistent or interfered with the effective operation of the Charter. However, to proceed with its analysis, the Court will assume that, by assessing and collecting a "convenience fee" absent a resolution for doing so, the County Defendants were in violation of O.R.C. 301.28 during the aforementioned period (January 1, 2011 through September 9, 2014).

Plaintiff asserts that by charging him a convenience fee for filing his state case electronically absent O.R.C. 301.28 authorization, the County deprived him of his property interest in money which, according to Plaintiff, necessarily fulfills the first element of his substantive due process claim. (See Doc #: 35-1 at 6 ("It is without question that Plaintiff has a constitutionally protected interest in his own property, which in the case *sub judice* is his money.").) The case upon which Plaintiff relies for this broad proposition, *Chupa v. Moceri*, No. 06-12584, 2007 WL 1059113 (E.D. Mich. Apr. 6, 2007), does not support it.

---

[2]Notably, Plaintiff does *not* argue that the County's assessment of convenience fees following September 9, 2014 violated substantive due process, that the County had no rational basis for charging the convenience fees, or that the amount charged violated substantive due process.

In *Chupa*, the plaintiffs were lawyers appointed by the court to perform work on behalf of their clients, and argued that denial of payment constituted violations of procedural and substantive due process.  With regard to the procedural due process claim, the court found that the plaintiffs had a property interest in payment for their work, and that denial of that interest was tantamount to a fine entitling them to an adequate procedure for demanding payment. However, when it came to substantive due process, more was needed.  The district court explained that "substantive due process claims typically involve fundamental rights and government actions that shock the conscience," and "[t]o defend against such claims, the governmental unit need only show that the policy implemented or enforced was rationally related to a legitimate government interest." *Chupa*, 2007 WL 1059113, at *7 (citing *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758,  (6th Cir. 2005).  The district court concluded that "the rights at stake [were] not clearly fundamental."  *Id*.  Here, Plaintiff was not deprived by the County of payment for services rendered, he was charged a fee for services provided.  Moreover, he "does not dispute that there may be a rational basis for the convenience fees charged," and "[a]ny discussion regarding the rational basis for the fees is putting the cart before the horse . . .." (Doc #: 35-1 at 9.)

That said, Plaintiff quickly moves on to the second element, i.e., whether the County's deprivation of his money was arbitrary and capricious.  Plaintiff contends that the County's violation of the statutory duty to enact a resolution authorizing the payment of the convenience fee prior to September 9, 2014 constituted arbitrary conduct *per se*.  (See Doc #: 35-1, at 7 ("Plaintiff has satisfied this burden as he has adequately pled the County was noncompliant with R.C. 301.28.").)  In support of this contention, he cites *Nicoletti v. Brown*, 740 F.Supp.1268,

-10-

1287 (N.D. Ohio 1987) (a "plaintiff need only plead and prove that defendants failed to perform their statutory, mandatory duty under the Revised Code and that this failure harmed the plaintiff.")  (Doc #: 35-1, at 7.)  *Nicoletti* is distinguishable.

In *Nicoletti*, involuntarily committed mentally disabled persons residing at a state-operated institution brought an action against the Ohio Department of Mental Retardation and Developmental Disabilities ("ODMRDD") under certain provisions of Title XIX of the Social Security Act for failure to maintain Medicaid certification.  The district court had to determine whether O.R.C. 5123.16–which required that state-operated institutions be in substantial compliance with Title XIX standards–bestowed upon those plaintiffs a legitimate claim of entitlement to reside in a Medicaid-compliant institution, and concluded that it did.  However, the district court expressly confined its holding to the facts of that case:

> Accordingly, this Court holds that to establish a violation of substantive due process *under the circumstances of this case*, plaintiffs need only plead and prove that defendants failed to perform their statutory, mandatory duty under [O.R.C.] 5123.16, and that this failure harmed the plaintiffs.

*Id.*, 740 F.Supp. at 1287 (emphasis added).

Unlike our case, the *Nicoletti* decision was predicated on a federal entitlement statute.  As the district court noted, to state a cause of action under § 1983, a plaintiff must allege that his "rights secured under federal laws" have been violated by actions under color of state law.  *Nicoletti*, 740 F.Supp. at 1282.  The district court found that O.R.C. 5123.60 and 5123.64(B) expressly provided for a private cause of action under which disabled persons could sue to enforce their *federal rights*.  In other words, the Ohio statutory scheme for operating institutions housing the mentally disabled imposed a mandatory duty on the ODMRDD to bring those institutions in compliance with federal Title XIX standards.  In this case, O.R.C. 301.28 contains

-11-

no language evidencing a clear private right of action to enforce federally protected rights. In fact, it contains no language whatsoever concerning federally protected rights.

The *Nicoletti* court also noted that, for substantive due process purposes, "property" encompasses interests that "extend well beyond actual ownership of real estate, chattels, or money." *Id*. at 1282 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 570 (1972). And that, paralleling the expansion of "liberty," "property" has been held to include a number of intangible, statutorily created "entitlements." *Id*. (citing *Duchesne v. Williams*, No. 86-1017, slip op. at 11 (6th Cir. Jun. 16, 1987)). In order to establish a property interest meriting due process protection, an individual must show that (1) the claimed interest stems from an independent source, such as a statute, and (2) the independent source of law bestows upon him a legitimate claim of entitlement. *Id*. (citing *Roth*, 408 U.S. at 577.) While Plaintiff's property interest stems from an independent source, O.R.C. 301.28, he has failed to show that the statute bestows upon him a legitimate claim of entitlement for substantive due process purposes. O.R.C. 301.28 merely states the requirements for a county to accept payments by financial transaction devices for county services. This is an insufficient claim of entitlement for substantive due process purposes.

In any event, Plaintiff's argument that a violation of state law automatically constitutes arbitrary and capricious conduct giving rise to a substantive due process claim has been summarily rejected. *See, e.g., Laidley v. City & Cnty. of Denver*, 477 Fed.App'x 522, 525 (10th Cir. 2012) ("Even clear violations of state law do not automatically or necessarily rise to the level of substantive due process violations. A great deal more is required."); *Elfers v. Varnau*, 101 F.Supp.3d 753, 762 (S.D. Ohio 2015) ("[A] violation of Ohio law is insufficient to establish

-12-

a substantive due process violation."), in turn citing *Pope v. Trotwood-Madison City Sch. Dist. Bd. of Educ.*, 162 F.Supp.2d 803, 811 (S.D. Ohio), *Collins v. City of Harker Hts.*, 503 U.S. 115, 129-130 (1992), and *Lewellen v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 34 F.3d 345, 347 (6th Cir. 1994))

Even if Plaintiff had stated a legitimate claim of entitlement, such claim fails if the County can show that its conduct in charging a convenience fee is rationally related to a legitimate government interest. The County has articulated a legitimate government reason for charging the convenience fees. The electronic case filing system is rationally related to the efficient and streamlined operation of the County Court, and the convenience fees associated with online payment of filing fees is properly placed on litigants and not on non-litigating taxpayers.[3] More importantly, however, Plaintiff does not dispute that there may be a rational basis for the convenience fees the County charged. (Doc #: 35-1 at 9.)

Even if Plaintiff could show that O.R.C. 301.28 confers a legitimate claim of entitlement upon him for substantive due process purposes, the claim still fails. By Plaintiff's own admission, the County's alleged violation of Ohio Rev. Code § 301.28 amounts to nothing more than negligence, which "is definitely not enough" for a substantive due process claim. *MSI Regency*, 433 Fed. App'x at 429; *see also Lewis*, 523 U.S. at 848 (holding that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). The Supreme Court has noted that it is, on the contrary, "behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct

---

[3]It also appears that civil litigants still have the option of filing complaints in person and paying the filing fee by cash, check or money order without being charged a convenience fee–making the assessment of a fee for the convenience of filing a complaint and paying the filing fee online entirely reasonable.

*intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (emphasis added).

Plaintiff asserts several times that the County Defendants acted negligently, asserting that the County acted without authority "for more than three years and *not realizing it*," referencing the "County's *error*," and alleging that the County attempted "*fixing*" the illegal conduct with the September 2014 legislation. (Doc. 35-1 at 8-9) (emphasis added). In Plaintiff's own words, "[t]he undisputed facts show that instead of owning up to their collective *mistake* after learning of their *follies* through Plaintiff's initial state court suit, the County, and its counsel, attempted to pass knee-jerk legislation several months later to *erase this mistake* by attempting to make the enabling legislation retroactive." (Id. at 4 (emphasis added).

The fact that the County Defendants attempted to remedy their "mistake" by passing an ordinance in September 2014 indicates that they did not deliberately intend to inflict harm on the Plaintiff as required for a substantive due process claim. *See Lewellen v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 34 F.3d 345, 348 (6th Cir. 1994) ("The defendants may have been negligent, but it is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest); *accord Lewis*, 523 U.S. at 849 (noting that a substantive due process violation requires a showing that defendants made a deliberate decision to deprive plaintiff of rights). While this mistake may amount to a violation of the Ohio Revised Code, it does not rise to the level of a constitutional substantive due process violation under § 1983.

//

**VI.**

In sum, this Court finds that the County's error in failing to pass the authorizing legislation following the changing of the government form on January 1, 2011, does not state a claim for a violation of Plaintiff's substantive due process rights.  Accordingly, the Court **GRANTS** Defendants' motions to dismiss the federal claim articulated in Count IV of the Complaint.  (**Doc ##: 19, 25, 30**.)

As the federal claim is the claim upon which subject matter jurisdiction rests, and it is better for state courts to be deciding state-law issues, the Court declines to exercise supplemental jurisdiction over the state-law claims asserted in Counts I-III.  *E.g., Detroit Memorial Park Ass'n, Inc. v. City of Detroit Bd. of Zoning Appeals*, 105 F.Aupp.3d 769, 779 (E.D. Mich. 2015).  Thus, the remaining claims are hereby dismissed without prejudice to refiling in state court.

**IT IS SO ORDERED.**

 */s/ Dan A. Polster     February 4, 2016*
**Dan Aaron Polster**
**United States District Judge**